IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    No. CR 06-60007-AA

        Plaintiff,

                                        OPINION AND ORDER

    v.

ARTURO HERNANDEZ-TORRES,

        Defendant.

_____

Leslie K. Baker
Assistant United States Attorney
701 High Street
Eugene, OR 97401
    Attorney for plaintiff

John J. Kolego
804 Pearl Street
Eugene, OR 97401
    Attorney for defendant

AIKEN, Judge:

    Defendant is charged with possession with intent to distribute

500 grams or more of methamphetamine in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(A)(viii).

1    - OPINION AND ORDER

Defendant moves to suppress all evidence and statements
obtained as a result of the search of his residence on January 3,
2006. Defendant claims that the search violated his rights under
the Fourth Amendment to the United States Constitution, because law
enforcement officers conducted a warrantless and unlawful search of
the curtilage surrounding his residence. The government opposes
the motion on the ground that entry into defendant's backyard was
justified by probable cause and exigent circumstances.

On February 13, 2007, the court received evidence and heard
testimony from five witnesses. Defendant's motion is denied.

### I. BACKGROUND

On December 30, 2005, the manager of the Village Inn Motel in
Springfield, Oregon spoke to Springfield Police Detective Keith
Seanor regarding a man who had checked into Room 222 of the motel.
When Det. Seanor arrived at the motel, he saw a 1998 Dodge Durango
in the motel parking lot. Based on past experience and previous
investigations, Det. Seanor knew that the Durango belonged to
defendant Hernandez-Torres, a suspected methamphetamine dealer.

A short time later, Det. Seanor saw defendant leave Room 222
and walk to the manager's office. Defendant rented Room 229 for
the night and moved his belongings from Room 222 to Room 229. Det.
Seanor examined the garbage from Room 222 and found an opened but
empty heat-sealed bag. The bag was soaked with water, and attempts
to field test it for narcotics were unsuccessful.

2    - OPINION AND ORDER

On December 31, 2005, Det. Seanor learned that defendant had checked out of Room 229. There, Det. Seanor found a small piece of partially-melted plastic that tested positive for amphetamine. Det. Seanor also observed water-soaked towels, pieces of heavy packing tape, and two large heat-sealed bags like that found in Room 222. The two bags also had been soaked with water. Det. Seanor found another bag in the garbage containing residue that tested positive for methamphetamine. Also in the garbage, Det. Seanor found drug records, cut trash bags, and a sheet of fabric softener, which can be used to mask the odor of methamphetamine. Based on this evidence, Det. Seanor believed that defendant's actions were consistent with a drug dealer repackaging large amounts of drugs into smaller quantities for distribution.

Det. Seanor also learned that when defendant checked out of the Village Inn Motel, he asked the manager about road conditions on Interstate 5 southbound to California. Det. Seanor suspected that defendant was traveling to California to obtain additional drugs to repackage and distribute in the community. Accordingly, Det. Seanor began preparing an affidavit in support of a search warrant for defendant's residence at 444 40th Street, where he lived with his girlfriend, Jennifer Clark.

On January 2 and 3, 2006, Det. Seanor conducted periodic surveillance of defendant's residence but saw no activity or vehicles.

During the evening of January 3, 2006, Det. Seanor was informed by other law enforcement officers that it appeared as though someone was in defendant's residence, because lights were on in the house and garage. Det. Seanor testified that he intended to obtain and execute the warrant when defendant returned, and that he decided to proceed with the warrant when he was informed of the activity at defendant's house.

While Det. Seanor was taking his affidavit in support of search warrant to a Lane County Circuit Court judge for review, Springfield Police Detective Matt Neiwert reported to Seanor that a 2001 white Jeep Grand Cherokee was exiting defendant's garage and driving away, and that a woman and a child had left the residence in a taxi. Det. Seanor thought that this activity suggested someone had just returned from a trip because no activity was observed at the house previously. Additionally, based on the evidence obtained from the motel, Det. Seanor believed that the activity suggested that drugs were being removed from the garage for repackaging and distribution. Fearing the removal or destruction of evidence, Det. Seanor instructed the officers to effectuate a traffic stop of the Jeep and to make contact with persons at defendant's residence to prevent evidence from being moved or destroyed.

Police officers effectuated a traffic stop of the Jeep and searched the vehicle. Officers found a loaded firearm, a cellular

phone, methamphetamine, a methamphetamine pipe, $991 in currency, mathematical notations, and a prescription bottle with defendant's name on it.

Det. Neiwert testified that he was instructed to contact and detain any individuals in defendant's residence to prevent the removal or destruction of evidence before execution of the search warrant. Accordingly, he and Det. George Crolly approached the front door of defendant's residence while Springfield Police Officers Grice and Turner covered the back door. As Det. Neiwert knocked on the front door, Det. Crolly looked through a front window and observed defendant walk inside to the front door and yell, "Who is it?" Det. Neiwert responded "Springfield Police" and Det. Crolly saw defendant immediately run from the front door to the attached garage. Both detectives heard movement and banging in the garage and believed defendant was attempting to destroy evidence.

Defendant attempted to flee out of the back of the house carrying a white, five-gallon bucket. He was confronted by Officers Turner and Grice, who both identified themselves and told defendant to stop and show his hands.

Hearing the commotion, Det. Neiwert ran toward the back of the house, while Det. Crolly stayed at the front.

Defendant ran back inside the garage and through the house, followed by Officers Turner and Grice. Within seconds, defendant

exited the front door of house with the bucket and collided with Det. Crolly on front porch. Vacuum-sealed plastic bags containing methamphetamine fell from the white bucket as a result of the collision. Det. Crolly grabbed defendant, and Officer Grice came through the front door and tackled them to the ground. Defendant struggled despite being told he was under arrest and to stop resisting. By the time Det. Neiwert ran back to the front of the house, defendant was scuffling with Crolly, Grice, and Turner. Eventually, all four officers subdued defendant and took him into custody. Defendant was placed into a patrol car and the residence was secured until Det. Seanor arrived with the search warrant.

While waiting for Det. Seanor, Det. Crolly waited in the living room with def's girlfriend and her children, and Det. Neiwert conducted a protective sweep of the house. Within ten to fifteen minutes, Det. Seanor arrived with the search warrant. Det. Neiwert testified that approximately one to one and one-half minutes elapsed between the time of the initial contact at defendant's front door and defendant's arrest.

## II. DISCUSSION

Defendant does not challenge Det. Neiwert's protective sweep of his residence or the search conducted pursuant to the search warrant. Rather, defendant argues that Officers Grice and Turner unlawfully entered the fenced curtilage of his residence and conducted an unlawful search. Defendant argues that neither

6  - OPINION AND ORDER

probable cause nor exigent circumstances justified their search, and that all evidence obtained as a result must be suppressed.

To prevail on a motion to suppress challenging the constitutionality of a search, a defendant must establish a personal and "legitimate expectation of privacy in the place searched." United States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003) (internal quotation marks and citation omitted).  The Fourth Amendment protection against warrantless searches extends to the curtilage around one's home, and the government does not dispute that defendant's fenced backyard is curtilage deserving of Fourth Amendment protection.  See United States v. Romero-Bustamante, 337 F.3d 1104, 1107 (9th Cir. 2003) (small enclosed yard adjacent to and located behind a house falls within the curtilage as a matter of law).

Notably, however, Officers Grice and Turner did not see evidence of methamphetamine manufacturing from their vantage point in the backyard.  Only when defendant ran out the front door of the house and collided with Det. Crolly did law enforcement officers observe evidence of methamphetamine manufacturing.  "[I]t does not matter that officers first trespass upon property that is obviously curtilage . . . while investigating a tip, as long as the incriminating observations themselves take place outside the protected curtilage." United States v. Traynor, 990 F.2d 1153, 1157 (9th Cir. 1993), overruled on other grounds, United States v.

Johnson, 256 F.3d 895 (9th Cir. 2001).

Nevertheless, defendant argues that but for the officers' illegal entry into the back yard, defendant would not have attempted to flee out the front door with the methamphetamine. Accordingly, defendant maintains that his incriminating behavior and the seizure of methamphetamine resulted from the officers' unlawful entry into his back yard.

The government argues that the officers' entry into defendant's backyard was justified by exigent circumstances. In order to show that a warrantless seizure of a residence falls within the exigent circumstance exception, the government has a twofold burden: "(1) it must show probable cause to secure the residence, and (2) it must show the existence of exigent circumstances to excuse the lack of a warrant." United States v. Howard, 828 F.2d 552, 555 (9th Cir. 1987). Here, defendant argues that there was neither probable cause nor exigent circumstances to justify the entry into his backyard. I disagree.

To establish probable cause, the government need only show a fair probability that evidence of criminal activity will be found. Defendant does not challenge the validity of the search warrant or its execution, and a judge found that probable cause existed to support the issuance of a search warrant. Given the information known to Det. Seanor and the fact that a search warrant was issued based on that information, I find that probable cause existed to

secure defendant's residence.

The next question is whether exigent circumstances existed to support entry into defendant's backyard.  Exigent circumstances are characterized as "those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." United States v. Lindsey, 877 F.2d at 780-81 (quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)).

Here, I find exigent circumstances existed to support Officers Turner's and Grice's entry into defendant's backyard.  Det. Seanor had evidence that defendant had previously taken large quantities of methamphetamine to a motel to cut into smaller quantities for delivery, and that defendant had traveled to California.  Det. Seanor testified that in his experience, California was a source for methamphetamine brought into Oregon, and that California had never been a destination for methamphetamine traffickers.  Given that someone had returned to the house after several days of inactivity and that individuals and a vehicle were observed leaving the residence, Det. Seanor and other officers had reason to believe that defendant or another person was removing evidence of methamphetamine manufacturing.

Regardless, even if exigent circumstances did not exist at the exact moment of Officers Turner's and Grice's initial entry into backyard, once defendant ran to the garage after being contacted by police and was heard banging around, exigent circumstances existed at that time to support their entry into the back yard to prevent defendant from fleeing.  Notably, law enforcement officers did not conduct a full search of defendant's residence until Det. Seanor arrived with the search warrant, and I find that the officers took limited and necessary actions to secure the premises.

CONCLUSION

For the foregoing reasons, defendant's Motion to Suppress Evidence (doc. 32) is DENIED.

IT IS SO ORDERED.

Dated this __9__ day of March, 2007.

Ann Aiken<br>
United States District Judge

10   - OPINION AND ORDER